UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HADIS IZADI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, et al.,<br><br>Defendants. | No. 2:25-cv-02354-DJC-SCR<br><br><u>ORDER</u> |

Plaintiffs claim Defendants have unreasonably delayed adjudicating their application for asylum, which has been pending for over four years. Plaintiffs seek to compel Defendants to do so via both the Administrative Procedure Act ("APA") and the Mandamus Act. Defendants now move to dismiss Plaintiffs' Complaint.

For the reasons stated below, the Court holds Plaintiffs have stated a claim for unreasonable delay under both the APA and the Mandamus Act but failed to state a violation of equal protection.

**BACKGROUND**

Plaintiffs Hadis Izadi and Hamedreza Azizi are citizens of Iran who seek asylum in the United States. (Compl. (ECF No. 1) ¶¶ 17–18.) They filed a Form I-589 application in October 2021, and U.S. Citizenship and Immigration Services ("USCIS")

acknowledged receipt. (*Id.* ¶ 18.) USCIS then instructed Plaintiffs to have their fingerprints taken, which they did. (*Id.* ¶ 19.) In the over four years since USCIS confirmed receipt, USCIS has not scheduled initial interviews for, let alone issued a final decision on, Plaintiffs' application. (*Id.* ¶¶ 19–20.)

To adjudicate asylum applications, USCIS employs a last-in-first-out scheduling process. (Mot. at 6; Compl. ¶ 50.) Under this policy, USCIS prioritizes scheduling initial interviews for individuals whose applications have been pending for 21 days or less. (Mot. at 7.) All applications for which USCIS cannot schedule interviews within 21 days "are placed into the backlog and scheduled for interviews under the second track." (*Id.*) In this track, "USCIS assigns some of its asylum officers to complete affirmative asylum applications pending in the backlog, starting with the oldest applications and working forward." (*Id.*)

In December 2025, USCIS issued a policy memorandum pausing this process due to national security concerns. (*Id.* at 7–8.) According to Defendants, "[r]ecent events have demonstrated that additional screening and vetting of applicants is necessary due to threats to both the national security and public safety of the United States." (*Id.* at 7.) USCIS has therefore issued an "immediate pause on all asylum applications in order to address vulnerabilities in the process and to conduct a comprehensive review of all policies, procedures, and guidance." (*Id.* at 7–8.) The December memorandum also provided that "within 90 days, USCIS [would] issue operational guidance." (*Id.* at 8.)

Plaintiffs filed this Complaint to compel Defendants to adjudicate their application via both the Administrative Procedure Act ("APA") and the Mandamus Act. Defendants then moved to dismiss Plaintiffs' Complaint. Briefing on Defendants' Motion to Dismiss is now complete. (Mot. (ECF No. 19); Opp'n (ECF No. 22); Reply (ECF No. 25).) The Court heard argument on Defendants' Motion on April 2, 2026. Michael Moghtader appeared for Plaintiffs, Shelley Weger appeared for Defendants, and the Motion was taken under submission. (*See* ECF No. 26.)

## LEGAL STANDARD

A party may move to dismiss a complaint for "lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In a "facial attack" under Rule 12(b)(1), "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment, and the court need not presume the truthfulness of the plaintiff's allegations. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A party may also move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to

relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Defendants argue Plaintiffs' claims should be dismissed because this Court lacks jurisdiction over them pursuant to Federal Rule of Civil Procedure 12(b)(1) and Plaintiffs fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Rule 12(b)(1)

This Court has jurisdiction over Plaintiffs' Administrative Procedure Act ("APA") claim as it arises under federal law. 28 U.S.C. § 1331. Plaintiffs bring a claim under the APA provision providing that the "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Plaintiffs' claims thus fall within this Court's subject matter jurisdiction.

Defendants' arguments to the contrary are unpersuasive. Defendants assert 8 U.S.C. § 1158(d) prevents this Court from adjudicating Plaintiffs' claims. (Mot. at 11.) Section 1158(d)(5) provides that, in the absence of "exceptional circumstances," asylum applicants must receive an initial interview or hearing within 45 days and a final decision within 180 days. 8 U.S.C. § 1158(d)(5)(A)(i)–(ii). However, section 1158(d)(7) then states that nothing in that subsection, "shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). Put together, these provisions bar suits that seek to force the Government to comply with these deadlines.

*////*

However, this section neither strips this Court of jurisdiction nor prevents Plaintiffs from claiming Defendants have "unreasonably delayed" the adjudication of their asylum application. 5 U.S.C. § 706(1). "Had Congress intended § 1158(d)(7) to be a jurisdiction-stripping provision, it would have adopted the express language found in § 1158(a)(3) and § 1158(b)(2)(D)." *Dzhanpolatov v. U.S. Citizenship & Immigr. Servs.*, No. 2:24-cv-05618-MCS-E, 2024 WL 5379592, at *2 (C.D. Cal. Nov. 27, 2024) (quoting *Varol v. Radel*, 420 F. Supp. 3d 1089, 1096 (S.D. Cal. 2019)); *see also Kucana v. Holder*, 558 U.S. 233, 251 (2010) (describing a "familiar principle of statutory construction: the presumption favoring judicial review of administrative action" and explaining that the Supreme Court has "consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction"). Rather, section 1158(d)(7) prevents individuals from suing to enforce the deadlines specified in the statute, namely from seeking judicially compelled adjudication of their applications within 180 days. But Plaintiffs do not seek to enforce compliance with these deadlines. Instead, Plaintiffs seek "relief under the APA's general requirement of reasonable time." (Opp'n at 5–6; *see also* Compl. at 7–8.) The "right to adjudication within a reasonable time exists independently of § 1158(d)." *Zhang v. Radel*, No. 2:23-cv-00688-GW-RAO, 2023 WL 12215486, at *3 (C.D. Cal. Apr. 28, 2023). Therefore, section 1158(d)(5) does not prevent this Court from reviewing Plaintiffs' claim under section 706(1) of the APA. *See Dumlu v. Edlow*, No. 8:25-cv-00056-KES, 2025 WL 3190886, at *4 (C.D. Cal. Oct. 2, 2025) (holding "§ 1158(d)(7) of the INS does not preclude review within the meaning of § 701(a)(1) of the APA"); *see also Shamsiev v. U.S. Citizenship & Immigr. Servs.*, No. 5:24-cv-01521-DDP-SP, 2025 WL 1456191, at *1 (C.D. Cal. May 21, 2025) (explaining that "courts within this circuit have often concluded that a failure or refusal by U.S. Citizenship and Immigration Services to adjudicate an application for immigration benefits, including an asylum application, within a reasonable time is subject to judicial review").

Defendants' argument that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of jurisdiction over Plaintiffs' APA claim is also unavailing. (*See* Mot. at 10.) Section 1252(a)(2)(B)(ii) strips jurisdiction over "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion" of that individual. 8 U.S.C. § 1252(a)(2)(B)(ii). Defendants argue that the pace of adjudication of asylum applications is discretionary because Congress has directed USCIS to conduct an initial asylum interview within 45 days of filing and make a final decision within 180 days of filing "in the absence of exceptional circumstances." (8 U.S.C. § 1158(d)(5)(A)(i)–(ii); *see* Mot. at 11; Reply at 2.) By "providing exceptions to the asylum adjudication timing provisions when USCIS, in its discretion, finds 'exceptional circumstances'" (Reply at 2), Defendants argue this statement "conferred discretionary authority upon the agency to determine the pace at which applications are adjudicated." (Mot. at 11.) This argument fails for three reasons.

*First*, the text of section 1158 does not explicitly grant the agency discretion over the speed with which it reviews Plaintiffs' individual case. Section 1252 only precludes review of decisions "specified under this subchapter to be in the discretion of" the agency. 8 U.S.C. § 1252(a)(2)(B)(ii). In *Kucana v. Holder*, the Supreme Court found this phrase "barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." 558 U.S. at 247. The Ninth Circuit has "interpreted *Kucana* to mean that § 1252(a)(2)(B)(ii) only bars review of a discretionary decision when 'the statute explicitly refers to the discretion of the Attorney General.'" *Arbid v. Holder*, 700 F.3d 379, 384 (9th Cir. 2012) (quoting *Delgado v. Holder*, 648 F.3d 1095, 1100 (9th Cir. 2011)). The fact that section 1158 permits the agency to exceed time limits in exceptional circumstances is not a sufficiently explicit statement of discretionary authority to preclude review. *See Delgado*, 648 F.3d at 1100 (holding fact that 8 U.S.C. § 1231(b)(3)(B)(ii) permits the Attorney General to "decide" whether a crime was serious does not explicitly confer

discretion such as to preclude judicial review under section 1252); *see also Arbid*, 700 F.3d at 384 (explaining that "[b]ecause § 1231(b)(3)(B)(ii) merely allows the Attorney General to 'decide' whether the [noncitizen's] crime was particularly serious, the language does not explicitly vest discretion in the Attorney General" (quotation omitted)). As section 1158 does not explicitly state that the agency has discretion over the pace of adjudication of asylum applications, section 1252 does not strip this Court of jurisdiction to review that pace. *See Chen v. Heinauer*, No. 2:07-cv-00103-RSL, 2007 WL 1468789, at *3 (W.D. Wash. May 18, 2007) (finding section 1252 does not bar jurisdiction over claim that processing of adjustment of status application was unreasonably delayed because "nothing in the INA addresses, much less specifies, any discretion associated with the pace of adjudication").

*Second*, even if the phrase "exceptional circumstances" were a sufficiently explicit grant of discretionary authority, Defendants' argument would nonetheless fail for the same reason Defendants' argument about section 1158(d)(7) fails. Again, Plaintiffs do not seek to compel adherence to the time limits set forth in or designations made under section 1158(d)(5). They do not ask this Court to review a discretionary decision that "exceptional circumstances" permit the agency to exceed the 180-day limit in their case. Rather, they seek this Court's review of whether the agency has "unreasonably delayed" in adjudicating their application.

*Third*, as district courts in this Circuit have identified, inaction is not a synonym for action. Section 1252 bars review of a discretionary "*decision or action*." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). These terms refer to affirmative conduct. *See* ACTION, Black's Law Dictionary (12th ed. 2024) (defining "action" as the "process of doing something; conduct or behavior"). The indefinite failure to act is thus not the type of conduct to which section 1252 applies. *See Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165–66 (N.D. Cal. 2007) (finding that the "'action' of the statute" should "not be equated with 'inaction,' and 'indefinite inaction' should not be construed as falling under the rubric of the discretion accorded the Attorney General").

As section 1252 does not strip jurisdiction over claims of unreasonable delay under APA section 706(1), the Court has jurisdiction over Plaintiffs' claims.

**II. Rule 12(b)(6)**

**A. APA Claim**

To succeed on an APA unreasonable delay claim, a plaintiff must show that: (1) the agency has a non-discretionary duty to act; and (2) the agency has unreasonably delayed acting on that duty. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Defendants do not dispute that they have a non-discretionary duty to act. (*See* Mot. at 16; *see also id.* at 11 ("USCIS acknowledges its duty to adjudicate all asylum applications that are complete and properly filed").) Rather, they argue the agency has not unreasonably delayed fulfilling that duty.

"When there is no set deadline by which an agency must act, a court evaluates whether the agency's delay is unreasonable by applying the six factors established by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC* ["TRAC"] and adopted by the Ninth Circuit in *Independence Mining Co. v. Babbitt." Alaska Indus. Dev. & Exp. Auth. v. Biden*, 685 F. Supp. 3d 813, 857 (D. Alaska 2023) (citing 750 F.2d 70 (D.C. Cir. 1984); 105 F.3d 502, 507 (9th Cir. 1997)). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138–39 (9th Cir. 2020) (quoting *TRAC*, 750 F.2d at 79–80).

**1. First and Second *TRAC* Factors**

"The most important TRAC factor is the first factor, the 'rule of reason,' under which we consider whether the time for agency action has been reasonable." *Nat. Res. Def. Council*, 956 F.3d at 1139 (cleaned up). This factor examines both the length of the delay and "whether there is any rhyme or reason for the Government's delay – in other words, whether the agency's response time . . . is governed by an identifiable rationale." *Poursohi v. Blinken*, No. 3:21-cv-01960-TSH, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (quotations omitted).

In general, courts have found USCIS's last-in-first-out scheduling system for handling asylum applications is a rule of reason. *See Teymouri v. USCIS*, No. 2:22-cv-07689-PA-JC, 2022 WL 18717560, at *4 (C.D. Cal. Jan. 31, 2022) (collecting cases); *see also Varol*, 420 F. Supp. 3d at 1097. While those courts acknowledge Congress has established a timetable for adjudicating asylum actions under 8 U.S.C. § 1158(d)(5)(A) as described above, they note that USCIS nonetheless maintains limited discretion. *See Varol*, 420 F. Supp. 3d at 1097; *see also Denisov*, 2024 WL 3522047, at *6. As a result of this discretion, the weight afforded to the timetable provided by section 1158(d)(5)(A), and USCIS's failure to comply with it, is limited. *See Varol*, 420 F. Supp. 3d at 1097. This fact thus does not outweigh the reasonableness of the last-in-first-out policy.

Courts in this Circuit "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavari v. Pompeo*, No. 2:19-cv-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019). Plaintiffs' asylum application has been pending since October 2021. (Compl. ¶ 18.) This represents a delay of over 51 months, or over 4 years, at the time of the present motion, which falls within the span other courts have found "not unreasonable." (*Yavari*, 2019 WL 6720995, at *8.)

However, this Court is unconvinced that Plaintiffs must wait five years to bring an unreasonable delay claim. The Ninth Circuit has noted that "[r]epeatedly, courts in

this and other circuits have concluded that 'a reasonable time for agency action is typically counted in weeks or months, not years.'" *Nat. Res. Def. Council*, 956 F.3d at 1139 (quoting *In re A Cmty. Voice*, 878 F.3d 779, 787 (9th Cir. 2017)). Further, some courts within the Ninth Circuit have declined to find delays shorter than four years per se reasonable at the motion to dismiss stage. *See, e.g.*, *Tigranyan v. Garland*, No. 2:24-cv-00741-SPG-RAO, 2024 WL 3740049, at *3–4 (C.D. Cal. July 1, 2024) (declining to dismiss a claim "that waiting approximately three-and-a-half years for an interview and adjudication of [plaintiff's] asylum application constitutes unreasonable delay under the APA" without prejudice to renewal at a later stage); *Tailawal v. Mayorkas*, No. 2:22-cv-01515-SPG-RAO, 2022 WL 4493725, at *4 (C.D. Cal. Aug. 18, 2022) (same for a two and a half-year delay). And, although the Third Circuit applies the factors set forth in *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998) rather than the *TRAC* factors, courts within that circuit "have found that a two-year delay in the adjudication of an asylum application is unreasonable." *Aydin v. Zeleke*, No. 2:24-cv-6253-KSM, 2025 WL 3499246, at *7 (E.D. Pa. Dec. 5, 2025); *see also Abulsheour v. Mayorkas*, No. 2:24-cv-00548-JS, 2024 WL 5170742, at *3–4 (E.D. Pa. Dec. 19, 2024) (holding plaintiff whose asylum application had been delayed two years stated a claim for unreasonable delay under the APA); *Alvarez v. Raufer*, No. 2:19-cv-03155-JCJ, 2020 WL 1233565 at *4 (E.D. Pa. Mar. 12, 2020) (holding four-year delay in adjudicating asylum application was unreasonable under the APA and noting courts have found delays unreasonable "when defendants fail to comply with timeframes anticipated—though not necessarily mandated—by the underlying immigration laws at issue, or, in the absence of a specific statutory timeframe, when defendants fail to act for over two years" (citations omitted)). Where Plaintiffs have waited over four years for a process Congress expected to take no longer than 180 days, this Court cannot find such delay per se reasonable.

Plaintiffs' case also critically differs from those in which courts have found such delays reasonable. The cases Defendants point to and those this Court has identified

all predate USCIS's December 2025 Policy Memorandum, which indefinitely paused the adjudication of all asylum applications. (*See* Mot. at 19.) Therefore, this Court is not solely assessing the last-in-first-out policy but must also ascertain whether reason can support an over four-year delay combined with an indefinite future delay, during which USCIS will not even attempt to process asylum applications.

The Court finds the delay in adjudicating Plaintiffs' asylum application is unreasonable. Not only have Plaintiffs already waited over four years for adjudication of their application but they also face indefinite future delay as Defendants offer no date by which they anticipate adjudicating Plaintiffs' application. The Ninth Circuit has found that an agency's failure to offer a concrete timeline by which it expects to take the action a plaintiff seeks to compel supports the finding that a rule of reason is lacking. *See, e.g.*, *Nat. Res. Def. Council*, 956 F.3d at 1139–40; *Cmty. Voice*, 878 F.3d at 786; *In re Pesticide Action Network N. Am.*, 798 F.3d 809, 814 (9th Cir. 2015). The December Policy Memorandum "introduce[s] yet another uncertainty in the process" as Defendants cannot even identify a timeline by which they expect to begin processing any asylum applications, let alone Plaintiffs'. *See Pesticide Action Network*, 789 F.3d at 814. USCIS has thus "stretched the 'rule of reason' beyond its limits." *Id.*

Accordingly, the first factor weighs in favor of Plaintiffs, and the second factor is neutral.[1]

**2. Third and Fifth *TRAC* Factors**

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay." *Poursohi*, 2021 WL 5331446, at *9; *see also Singh*, 2023 WL

[1] District courts disagree as to whether, in similar circumstances, the second *TRAC* factor should favor the defendant or be considered neutral. *Compare Fang Yan v. Dir. of Los Angeles Asylum Off. for the U.S. Citizenship & Immigr. Servs.*, No. 2:22-cv-05846-ODW-MRW, 2023 WL 4053410, at *4 (C.D. Cal. June 16, 2023) (finding that "the first and second *TRAC* factors favor Defendants"), *with Varol*, 420 F. Supp. 3d at 1097 (finding the "first factor favors the Defendants and the second factor is neutral"). The Court finds that, in this context, this factor is neutral as Defendants should not be rewarded for exceeding Congress' preferred timetable nor penalized for doing so where the statute expressly permits it.

4669864, at *3. Plaintiffs assert that "Defendants' inaction has caused and continues to cause significant prejudice, including ongoing uncertainty, emotional and financial harm, and the inability to obtain a merits determination of their protection claims." (Compl. ¶ 21.)

Defendants counter that Plaintiffs' Employment Authorization Documents ("EADs"), which allow them to legally work while awaiting adjudication, temper the effects of this delay on Plaintiffs. (Mot. at 20.) According to Defendants, these EADs are valid through April 2029 and, thereafter, can be renewed in 18-months increments. (*Id.* at 3.) Ordinarily this fact would render these factors neutral. While employment authorization does not eliminate the stress of a protracted asylum process, courts typically find that, when an individual can continue to live and work in the United States, the effects of the delay are significantly reduced for purposes of the third and fifth *TRAC* factors. *Varzaghani v. Mayorkas*, No. 8:23-cv-1876-DMG-KES, 2024 WL 2952141, at *5 (C.D. Cal. June 5, 2024); *see also Dawod v. Garland*, No. 2:23-cv-03211-MWF-MRW, 2023 WL 8605320, at *9 (C.D. Cal. Aug. 10, 2023).

However, under the current administration's policies, noncitizens with pending asylum applications and EADs now risk losing that ability to live and work in the United States at any time and without warning. This Court alone has received hundreds, if not thousands, of habeas petitions from individuals with pending asylum applications and EADs who have been detained in prison-like conditions without access to adequate food or medical care. *See, e.g.*, *Alva v. Noem*, No. 1:25-cv-01600-DJC-CSK, 2025 WL 3281211, at *1, *4 (E.D. Cal. Nov. 25, 2025) (granting habeas petition of noncitizen who "applied for asylum and obtained her Employment Authorization Document through this pending asylum application" and who, while detained, was denied access to medical care and suffered from "sleep deprivation, lack of proper hygiene, and food deprivation"); *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (noting the "subpar medical and psychiatric care in ICE detention facilities" and "the economic burdens imposed on detainees and their

families as a result of detention"). The risks Plaintiffs face to their health, liberty, and financial stability each day their application remains pending are staggering. Accordingly, these factors tip sharply in Plaintiffs' favor.

**3. Fourth *TRAC* Factor**

The fourth *TRAC* factor asks courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *In re Nat. Res. Def. Council*, 956 F.3d at 1139 (quoting *TRAC*, 750 F.2d at 79–80). In adjudicating the applications before it, USCIS is faced with applications from numerous individuals who are in desperate need of asylum and may suffer serious harm from having their applications delayed. As a result, courts have repeatedly recognized that the effect of granting relief to asylum applicants who file suit is that the plaintiff is ordered to the front of the line. *See, e.g.*, *Varol*, 420 F. Supp. at 1098 (explaining that "granting relief to the Plaintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief"). This often means that when a plaintiff succeeds in obtaining relief through suit, they are moved ahead of other applicants who may be suffering from similar or worse delays and even worse prejudice as a result of those delays.

However, granting Plaintiffs relief would not produce the same effect here. As USCIS is not adjudicating any asylum applications currently, requiring USCIS to adjudicate Plaintiffs' application would not divert resources away from others' asylum applications. In other words, granting relief would not push Plaintiffs to the front of the line; once USCIS begins to adjudicate asylum applications again, adjudication will resume in the exact same place in the line that it left off.

Finally, Defendants' arguments concerning national security are unpersuasive at this stage. Defendants assert that an "order to expedite the adjudication of Plaintiffs'' [sic] application would intrude on the President's and Director of USCIS's discretionary determination that all asylum applications be placed on hold in order to assess and adjust the adjudication processes being used in light of recent national security

issues." (Mot. at 22.) Though courts normally afford the Government significant deference in national security matters, Defendants fail to identify any reason why the adjudication of these particular Plaintiffs' asylum application may pose a national security risk. Therefore, the fourth *TRAC* factor is neutral.

**4. Sixth *TRAC* Factor**

The sixth and final TRAC factor is not a factor "but merely a confirmation that agency delay need not be intentional to be unreasonable," though "the presence of intentional delay would strongly support Plaintiff's argument." *Feng v. Beers*, No. 2:13–cv–02396-JAM-DAD, 2014 WL 1028371, at *5 (E.D. Cal. Mar. 14, 2014). Plaintiff does not allege that Defendants have acted in bad faith. (*See* Opp'n at 12 ("Plaintiffs need not allege bad faith or impropriety to state an unreasonable-delay claim.").) As such, this factor is neutral.

**5. Weighing the *TRAC* Factors**

The Court finds that the first, third, and fifth factors weigh in Plaintiffs' favor, while the second, fourth, and sixth factors are neutral. As the "most important *TRAC* factor" weighs in Plaintiffs' favor while none weigh in Defendants', the Court finds Plaintiffs have stated a claim under the APA. *Nat. Res. Def. Council*, 956 F.3d at 1139.

**B. Mandamus Claim**

Plaintiffs have stated a claim for unreasonable delay of adjudication of their asylum application under the Mandamus Act. The relief sought under the Mandamus Act and the APA is "essentially the same." *Indep. Mining Co.*, 105 F.3d at 507. Thus, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the Court] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022). Under both the APA and the Mandamus Act, Plaintiffs seek the same remedy: an order compelling Defendants to schedule and conduct Plaintiffs' asylum interviews and issue a final decision on the application within a set amount of time. (*See* Compl. ¶ 49; *Id.* at 9.) As Plaintiffs have stated a claim under the APA, the Court finds Plaintiffs have also successfully stated a

claim under the Mandamus Act. *See Tigranyan*, 2024 WL 3740049, at *4 ("Because this Court has already found that Plaintiff has satisfied the requirements for stating a claim under the APA for the purposes of Rule 12(b)(6), the Court also finds that Plaintiff has successfully stated a claim under the Mandamus Act."); *Barker v. U.S. Citizenship & Immigr. Servs.*, 2023 WL 7107257, at *5 (C.D. Cal. Sept. 11, 2023) ("Because there is an adequate remedy under the APA, and because the Plaintiffs have stated a claim under the APA, the Court finds that Plaintiffs have also stated a claim for mandamus relief.").

However, to the extent Plaintiffs seek a mandamus based on violation of equal protection, Defendants' motion is granted with respect to that claim. In support of this claim, the Complaint solely provides that the last-in-first-out policy "violates the due process of equal protection of the U.S. Constitution" and that "[u]nder the doctrine of equal protection, the USCIS should have followed the practice of 'first in, first out', as it has always followed in other immigration matters." (Compl. ¶ 50.) However, as Plaintiffs do not allege that this policy "proceeds along suspect lines nor infringes fundamental constitutional rights," it is subject to rational basis review and, therefore, does not violate equal protection "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Franceschi v. Yee*, 887 F.3d 927, 940 (9th Cir. 2018).[2] Even if Plaintiffs are correct that they are similarly situated to those whose applications are adjudicated on the prioritized track (*see* Opp'n at 14), Defendants' policy is rationally related to the legitimate government interest of deterring the filing of "false or frivolous I-589 simply to obtain attendant benefits, not due to a legitimate need for protection." (Mot. at 6.) As such, this portion of Plaintiffs' Mandamus Act claim is dismissed.

---

[2] Though this case addresses the Fourteenth Amendment's Equal Protection Clause, the "approach to Fifth Amendment equal protection claims is . . . precisely the same as [its] approach to equal protection claims under the Fourteenth Amendment, and precedents decided under the latter are controlling when analyzing claims under the former." *G.B. ex rel. G.P. v. United States Env't Prot. Agency*, 172 F.4th 1042, 1054 n.5 (9th Cir. 2026).

"In general, leave to amend is only denied if it is clear that amendment would be futile and that the deficiencies of the complaint could not be cured by amendment." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 608 (N.D. Cal. 1992) (quotation omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (explaining that a "district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts"). At this stage, it is not clear that amendment of Plaintiffs' equal protection allegation would be futile. Therefore, Plaintiffs are granted leave to amend this portion of their Mandamus Act claim.

**CONCLUSION**

Accordingly, Defendants' Motion to Dismiss (ECF No. 19) is GRANTED in part and DENIED in part. Defendants' motion is solely granted as to Plaintiffs' Mandamus Act claim only insofar as it alleges an equal protection violation (ECF No. 1 ¶ 50). Plaintiff may file a First Amended Complaint within twenty-one (21) days of the date of this order.

IT IS SO ORDERED.

Dated: **September 16, 2026**

Daniel J. Calabretta
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Izadi25cv02354.mtd